| Minute Order Form (06/97) | | | |
|---|---|---|---|

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 1753 | DATE | 12/3/2002 |
| CASE TITLE | KUNZ vs. CHICAGO, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Summary judgment is entered in favor of defendant Michael Goldston.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | DEC 0 5 2002 | |
| | Notified counsel by telephone. | | date docketed | 63 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | 02 DEC -4 PM 1:20 U.S. DISTRICT COURT CLERK | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEREMY KUNZ,

Plaintiffs,

v.

CITY OF CHICAGO, OFFICER DeFELICE
(Star No. 14307), OFFICER COVELLI (Star
No. 15028), OFFICER CLARK (Star No.
11691), OFFICER NASSER (Star No.
3218), OFFICER MOTA (Star No. 3548),
OFFICER FRECHIG (Star No. 19565),
SGT. GILLESPIE (Star. No. 2415), and
O.P.S. INVESTIGATOR MICHAEL
GOLDSTON,

Defendants.

No. 01 C 1753
Judge James B. Zagel

DOCKETED
DEC 0 5 2002

## MEMORANDUM OPINION AND ORDER

Jeremy Kunz has filed a three-count complaint for alleged violations of his constitutional rights under 42 U.S.C. § 1983 and under Illinois common law. He contends that on March 22, 1999, he was arrested by several Chicago Police Department officers and beaten without provocation. He further contends that he was subsequently coerced into confessing to a crime that he did not commit, and that after he brought this to the attention of the Office of Professional Standards ("OPS") of the Chicago Police Department, OPS performed a superficial investigation to cover up the misconduct of the officers involved. Kunz has named OPS investigator Michael Goldston in his suit, alleging that he acted in concert with the officers involved by conspiring to deprive Kunz of the fruits of the OPS investigation, notwithstanding his alleged knowledge of exculpatory information with respect to the then ongoing criminal prosecution of Kunz for his possession of a stolen automobile. Goldston has filed for summary judgment, which is



appropriate if, after drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 320 (7th Cir. 1992). The question is thus "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Background

For the purposes of summary judgment, I assume that the following is true. On the evening of March 22, 1999, Kunz was driving a vehicle lent to him by a friend who asked him to use the vehicle to make a drug delivery for him. The friend represented to Kunz that he was the owner of the vehicle, but unbeknownst to Kunz, the vehicle had been stolen earlier that day. When police spotted Kunz driving the vehicle and turned on their lights, Kunz led the police on a low speed chase, eventually abandoning the vehicle and scaling a chain link fence into an enclosed lot where he was arrested. Kunz claims that once he was under arrest, several officers kicked him in the ribs and removed him from the fenced-in area by dragging him along the ground. Kunz further claims that at the police station, another officer punched him in the face repeatedly until he "confessed" to knowing the vehicle was stolen. All that is clear is that at some point, Kunz sustained a fractured rib along with facial injuries, including a number of abrasions. While incarcerated on the stolen vehicle charges, Kunz (through his mother) filed a complaint with OPS alleging that he was repeatedly kicked in the ribs at the scene of the arrest, that he was dragged underneath the fence, and that he was punched repeatedly in the face while

being interrogated at the police station to coerce him to confess to knowing that the vehicle was stolen.

On April 15, 1999, OPS assigned investigator Michael Goldston to investigate the allegations. Goldston began his investigation by gathering all of the police reports. These reports indicated that among other things discussed above, the plaintiff may have fallen from the fence he scaled during the ensuing foot pursuit. As part of the investigation, an OPS investigator interviewed Kunz at Cook County Jail. Regarding his allegations that officers had beaten him at the time of his arrest, Kunz admitted that he had taken drugs and alcohol that evening and that he was not able to describe in detail any of the officers who had arrested him. At a later date, the investigator showed Kunz a series of photographs. Kunz correctly picked out one of the officers who pursued him, but he was unable to recall if that specific officer had struck him. OPS then interviewed the identified officer, who admitted participating in the pursuit but denied striking Kunz. Regarding his alleged coerced confession at the police station, Kunz contends that the officer appeared to be Italian-American and during a photo line-up identified a certain officer as the officer who struck him at the station. OPS then interviewed this officer, who denied being present when Kunz was taken into custody or brought to the station and also denied striking or having any contact with him. Another officer corroborated this statement.

In the course of his investigation, Goldston had no conversations with the police officers of the Chicago Police Department relative to Kunz's arrest, other than the interviews obtained during the OPS investigation. His knowledge of the activities of the police officers involved in the arrest consisted solely of what was contained in the OPS file, which included witness statements and photos of Kunz. These photos, taken of Kunz immediately following the

3

interrogation, show some injury to his face. In his closing report, Goldston stated that he did not find grounds to substantiate the excessive force charges. Based upon the information available to him, he was unable to conclude that it was more likely than not that the police officers caused Kunz's injuries because it was entirely plausible that these injuries were sustained prior to the arrest. Goldston did conclude, however, that two officers failed to provide Kunz with prompt medical assistance.

Analysis

Kunz has charged Goldston with acting in a conspiracy with the involved officers to cause Kunz constitutional injury. A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is in agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage. *Rotermund v. U.S. Steel Corp.*, 474 F.2d 1139 (8th Cir. 1973). In order to prove a civil conspiracy, Kunz is not required to provide direct evidence of the agreement between the conspirators; circumstantial evidence may provide adequate proof of a conspiracy. *Hoffman-La Roche, Inc. v. Greenberg*, 447 F.2d 872 (7th Cir. 1971). However, a claim for civil conspiracy cannot be based upon speculation or conjecture. *Id.* Although a "cover-up" of unlawful conduct may give rise to a claim for civil conspiracy, in order to pursue such a claim, Kunz must plead and prove a constitutional injury and the factual basis supporting the existence of a conspiracy. *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204 (7th Cir. 1980). In this suit,

4

Kunz has sufficiently demonstrated neither any factual basis supporting the existence of a conspiracy involving Goldston nor any constitutional injury.

Existence of Conspiracy

Kunz alleges that Goldston had exculpatory evidence in his possession that an officer used physical force to coerce Kunz to confess but buried this evidence in his investigative file. The extent of Kunz's "proof" is his assertion that Goldston had witness statements indicating that Kunz had no noticeable injuries to his face at the time he was arrested but that photos showed serious injuries to his face that must have been inflicted while at the police station. This allegation is nothing more than conjecture and speculation, not supported in the record. Goldston had no concrete evidence that Kunz had been coerced into confessing theft of the automobile. No other evidence aside from Kunz's sheer allegations was uncovered during the course of Goldston's investigation that even arguably could have indicated that it was more likely than not that Kunz had been coerced. At best, Goldston's investigation uncovered that Kunz sustained a fractured rib along with facial injuries, including a number of abrasions, but Goldston could not determine whether the injuries were caused by the officers or the other activities Kunz was involved with during the course of the evening. Kunz has produced no evidence to refute this conclusion and indicate that Goldston intentionally withheld exculpatory evidence. Rather, Goldston and the OPS investigators appear to have expended a fair amount of time and effort conducting their investigation. Nothing suggests their work nor findings were arbitrary or capricious. Goldston's final decision was based upon Kunz's inability to make a positive identification along with the fact that his injuries could have been sustained by his fall from the

fence. Whether or not someone else may have reached a different conclusion is immaterial. It is sufficient that the findings were not so arbitrary as to suggest a concerted effort to cover up the allegations made against the accused officers. Indeed he found merit to a charge that two officers had failed to provide proper medical treatment to Kunz.

Kunz points to other facts that he argues support his conspiracy theory. For example, Kunz argues that Goldston unnecessarily kept Kunz's "C.R. File" status "open" for more than a year beyond the date by which conclusions were required per OPS regulations. I find this fact immaterial because OPS has no regulation as to the amount of time in which an investigation must be concluded, and Goldston has sufficiently explained that due to his heavy caseload along with the fact that one of the accused officers was on extended medical leave, the investigation could not be completed for several months. Kunz also claims that Goldston failed to adequately interview officer witnesses regarding Kunz's allegations, namely refusing to ask any of these officers if they or anyone they saw kicked Kunz, dragged him under the fence, or punched him in the face. Even if true, however, there is no statutory or case authority holding that shortcomings in post-incident investigations are sufficient to establish the existence of a conspiracy. *Mettler v. Whitledge*, 165 F.3d 1197 (8th Cir. 1999). Finally, Kunz claims that Goldston refused to comply with multiple court orders to turn over the OPS file which allegedly contained among other things, the so-called exculpatory photographs. However, Goldston has indicated that the OPR practice is to keep open files confidential, and nothing in the record contradicts this. More importantly, however, nothing in the record indicates that anyone associated with Kunz's trial requested information from Goldston. In fact, nothing indicates that he even knew about it.

In addition to pointing out these facts, Kunz cites to *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988), and *Newsome v. McCabe*, 260 F.3d 824 (7th Cir. 2001), in support of his conspiracy theory, but neither case supports his theory. *Jones* is distinguishable on the facts. Unlike the situation here, the defendant lab technician in *Jones* had physical evidence which unquestionably proved the plaintiff's innocence but she produced a deceitful lab report which omitted this information. Here, nothing in Goldston's file remotely exculpated Kunz from being prosecuted. Furthermore, even if such exculpatory evidence existed, Goldston took no intentional affirmative action to deceive anyone as the lab technician in *Jones* did.

*Newsome* is distinguishable on both the facts and the law. Regarding the law, *Newsome* said that a genuine constitutional problem could exist only if a plaintiff could prove that police officers *deliberately* withheld information in an attempt to "misdirect or mislead the prosecutors and the defense," but "the police need not spontaneously reveal to prosecutors every tidbit that with the benefit of hindsight (and the context of other evidence) could be said to assist defendants." 260 F.3d at 824. If a plaintiff could only prove that the officers failed to take the initiative in providing the prosecutors or defense counsel with information, "no due process violation by the police [would be] established." *Id.* Goldston is clearly not liable under this analysis. A lack of initiative in coming forward with information is the worst thing for which he can be accused, but even this presupposes that he did have exculpatory evidence and that he knew that Kunz was facing trial. As for the facts, unlike *Newsome*, Goldston is not a police officer who was interviewed by either the prosecution or the defense. Furthermore, there is nothing in the record indicating that anyone associated with Kunz's criminal trial requested

7

information from Goldston. In fact, nothing in the record indicates that Goldston was even aware of Kunz's trial.

Constitutional Injury

Section 1983 only authorizes recovery for a conspiracy to violate a clearly established right, not for the conspiracy itself. *Hostrop v. Board of Jr. College District No. 515*, 523 F.2d 569 (7th Cir. 1975). Kunz must allege that he has suffered an injury over and above the underlying injuries from his alleged excessive force claim. *Penn v. Chicago State University*, 162 F. Supp. 2d. 968 (N.D. Ill. 2001). Here, Kunz has failed to articulate a constitutional injury that has been violated. Putting aside the issue of whether Goldston was indeed obligated to come forward with any exculpatory evidence if he had it, Kunz has failed to demonstrate how the evidence Goldston did discover as a result of his investigation was even arguably exculpatory, thus raising any *Brady* issues, or how such evidence could have eliminated probable cause for Kunz's detention, thus raising any Fourth Amendment issues.

Kunz also once again puts forth cases to support his theory but to no avail. Citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994), Kunz states that Goldston failed to take any measures to end the "unlawful detention" of the plaintiff. *Yang* is easily distinguishable from the present case because unlike the officer in *Yang*, Goldston was not physically present during the alleged constitutional violations and thus had no realistic opportunities to intervene. Furthermore, unlike *Yang*, there is no evidence now and there was no evidence at the time of Kunz's sentencing to give Goldston reason to intervene in Kunz's sentencing. He had no evidence that was corroborated by anyone, other than the plaintiff, to prove that the plaintiff did not know that the

8

vehicle in question was stolen. Finally, Kunz's argument that Goldston is somehow "directly responsible" for the excessive force he suffered on the basis of *Czajkowski v. City of Chicago*, 810 F. Supp. 1428 (N.D. Ill. 1993), is outlandish. Unlike *Czajkowski*, Goldston had no personal involvement with any of the accused officers and was in no supervisory position over any of them.

For the foregoing reasons, summary judgment for Goldston is GRANTED.

ENTER:

James B. Zagel
United States District Judge

DATE: 12/03/2002