# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1753 | **DATE** | 12/23/2004 |
| **CASE TITLE** | JEREMY KUNZ vs. CITY OF CHICAGO, ET AL | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Motion (104-1) for summary judgment is granted in part and denied in part. Summary judgment is entered in favor of defendant and against plaintiff on the claim of malicious prosecution claim. Motion (120-1) to strike is denied. Motion (108-1) to bar is granted. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 2 9 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 125 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| DW | courtroom deputy's initials | | mailing deputy initials | |

Date/time received in central Clerk's Office

JEREMY KUNZ,

    Plaintiff,

    v.

CITY OF CHICAGO, et al.,

    Defendants.

**DOCKETED**

DEC 2 9 2004

No. 01 C 1753
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Jeremy Kunz has filed an amended four-count complaint for alleged violations of his constitutional rights under 42 U.S.C. § 1983 and Illinois law. Kunz alleges that during and subsequent to his arrest on March 22, 1999 he was beaten by police officers without provocation and was coerced into confessing to a crime that he did not commit; that he was denied medical attention in a manner that violated his constitutional rights; and that the charges subsequently filed against him constituted malicious prosecution in light of his coerced confession. Defendants have filed a motion for summary judgment on Counts II through IV of Kunz's amended complaint.

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in the plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to the Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Defendants assert

125

that Kunz lacks evidence to support his claims of malicious prosecution (Count II) and denial of medical attention (Count IV).[1]

*Background*

For the purposes of summary judgment, I assume the following facts are true. On the evening of March 22, 1999, Kunz (with drugs in his possession) was driving a vehicle lent to him by a friend. The friend represented to Kunz that he was the owner of the vehicle, but unbeknownst to Kunz, the vehicle had been stolen earlier that day. When police spotted Kunz driving the vehicle and turned on their lights, Kunz led the police on a low speed chase, eventually abandoning the vehicle and scaling a chain link fence into an enclosed lot where he was arrested. Once he was under arrest, several officers kicked him in the ribs and removed him from the fenced-in area by dragging him along the ground. At the police station, Defendant Officer DeFelice punched Kunz in the face repeatedly until he "confessed" to knowing the vehicle was stolen. During the interrogation, Kunz lost consciousness several times. By the end of the arrest and interrogation, Kunz had sustained a fractured rib and facial injuries, including a number of abrasions.

After the interrogation ended, Kunz was taken to the 23rd District lock-up. On his arrival, someone marked a form indicating that Kunz had "obvious pain or injury." Kunz could feel blood dripping down his face, abrasions on his face, head and side; felt his eyes swelling and pain at the bridge of his nose; and felt a sharp pain in his right ribs which made it difficult to breathe. Shocked at what had occurred, Kunz did not immediately request medical attention.

---

[1]In his Response to Defendants' Motion for Summary Judgment, Kunz does not object to the dismissal of his conspiracy complaint (Count III); thus this opinion addresses only Counts II and IV.

Kunz requested medical assistance from the jailer at the police station only later that night, and did so again the following day. At 4:45 PM on March 23, 1999, the keeper at the lock-up filled out an "Arrestee Medical Clearance Report" in which he declined to accept Kunz into the lock-up pending medical clearance.

Kunz was then transported to Thorek Hospital, where the attending physician noted multiple ecchymosis (bruises) and abrasions on Kunz's head and face and focal right wall tenderness. Kunz underwent a CT scan and was diagnosed with a fractured rib. Kunz's facial wounds were irrigated and cleaned and he was given a non-prescription painkiller. Approximately 24 hours later, Kunz was treated in the Emergency Room of Cermak Health Services, where he reported blacking-out, shortness-of-breath and coughing up blood. His only subsequent treatment was a prescription for 800 mg of Motrin.

After his arrest on March 22, 1999, Kunz was charged with possession of a stolen motor vehicle (the "PSMV" charge), aggravated fleeing and leaving the scene of an accident. Kunz was prosecuted for the PSMV charge by the Cook County State's Attorney's Office and remained in jail awaiting trial on the PSMV charge until roughly November 20, 2000. During that time Kunz was also charged with possession of a controlled substance (the "PCS" charge) stemming from an incident unrelated to his March 22, 1999 arrest.[2] On November 15, 2000 Kunz appeared before a criminal court judge for sentencing on the PCS charge. In recommending a sentence for Kunz, prosecutors identified the pending PSMV charge as a factor for enhancing Kunz's sentence, even though Kunz had not pled guilty to the charge and was awaiting trial on the

_____

[2] Kunz was charged for possession of a controlled substance along with a co-defendant, a high school student named Mr. Weisinger.

3

charge. The judge then imposed a three-year sentence. After the sentence was imposed, prosecutors disposed of the PSMV charge via *nolle prosequi*. In 2001, Kunz filed a complaint against multiple police officers and the City of Chicago alleging, *inter alia*, malicious prosecution and deprivation of necessary medical care related to his March 1999 arrest.

### Count II: Malicious Prosecution

#### A. Grounds for Malicious Prosecution Claims

Kunz alleges that the Defendants are liable for malicious prosecution on the PSMV charge because his confession was coerced in an unconstitutional manner. In order to survive a motion for summary judgment on this count, Kunz must demonstrate genuine issues of material fact with respect to the following: a) the commencement or continuance of an original criminal judicial proceeding by the Defendants; b) termination of the prosecution in his favor – and specifically, in a manner indicative of his innocence; c) the absence of probable cause for the proceeding; d) malice by the Defendants; and e) damages resulting to him. *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). At issue in this case are the second and fifth elements of the *Swick* test. The burden of proving favorable termination rests with Kunz; he must establish that the *nolle prosequi* was entered for reasons consistent with his innocence. *Id.* at 1243. An allegation setting forth a disposition of *nolle prosequi*, without more, does not suffice. *Id.*; *see also Evans v. City of Chicago*, 2001 WL 1028401 at *12 (N.D. Ill. Sept. 6, 2001) ("at the summary judgment stage and beyond, the 'bare use of a *nolle prosequi* order does not establish that the criminal proceedings were terminated in a manner indicative of the plaintiff's innocence'") (quoting *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 924-26 (7th Cir. 2001)).

4

Kunz offers the following evidence to support his argument that the *nolle prosequi* entered on November 15, 2000 is indicative of his innocence. First, he points to the *nolle prosequi* itself. Additionally, he offers transcripts from a series of proceedings in criminal court covering the period of his arrest for possession of a stolen motor vehicle to the entrance of the *nolle prosequi*. Finally, he offers the testimony of George Andrews, proffered as an expert on issues including the probable reason for the *nolle prosequi* entered in Kunz's criminal case. The Defendants have moved to strike the transcripts on which Kunz relies, and have also moved to bar the testimony of Kunz's expert. Because Kunz cannot satisfy the *Swick* standard without offering more than the *nolle prosequi* itself as evidence of his innocence, I will address both of the Defendants' motions before completing my analysis of the *Swick* factors.

### i. Defendant's Motion to Strike Portions of Plaintiff's Rule 56.1(b)(3)(B) Statement of Facts and Rule 56(b)(2) Memorandum

To support his claim of malicious prosecution, Kunz offers evidence in the form of transcripts from the Cook County criminal court proceedings stemming from the PSMV and PCS charges. Defendants allege that Kunz failed to identify and produce these documents during discovery as required by Rule 26, and that he is therefore barred by Rule 37(c)(1) from using the transcripts in support of his Rule 56.1 Statement of Fact and his Memorandum Opposing Summary Judgment.[3] During discovery, Defendants served Kunz with interrogatories and document requests that demanded information relating to his allegation of malicious prosecution, including the factual bases for the claim. Kunz did not identify or refer to the transcripts in his response to the interrogatories, nor did he produce them in response to Defendants' request for

---

[3]Defendants also challenge the testimony of Kunz's expert insofar as he relies on these transcripts in reaching his opinion; I address this issue in the following section.

documents. Defendants learned of Kunz's plan to rely on the transcripts only after he submitted an expert report (the "Andrews report") that explicitly relied on the transcripts.

Defendants further allege that they only learned of the "factual bases" of Kunz's malicious prosecution allegation when Kunz submitted his response to their Motion for Summary Judgment. Specifically, Defendants argue that until Kunz's submission of his Memorandum Opposing Summary Judgment and his Local Rule 56.1 Statement of Additional Facts, they did not know that Kunz intended to argue that: a) the State made an admission indicative of Kunz's innocence; b) the State refused to comply with a court order to produce the O.P.S.[4] investigation file requested by Kunz's counsel in the criminal case; c) the State knew or believed that the aforementioned file was exculpatory; and d) that the State entered the *nolle prosequi* because it "ran out of rope" when the court in the criminal proceeding declined to grant it any more continuances. Defendants argue that Kunz impermissibly bases each of these arguments on the undisclosed transcripts from the criminal court proceedings.

I find Defendants' argument – which goes so far as to portray the transcripts as "hidden" evidence – somewhat disingenuous, particularly in light of the protracted and contentious history of discovery in this case. It appears that Kunz did not disclose his intent to rely on the criminal court transcripts in response to specific interrogatories, nor provide copies of the transcripts to Defendants. However, the transcripts are public records from a criminal prosecution at the very heart of Kunz's Complaint. Moreover, Kunz provided copies of the transcripts to Defendants on their request, albeit after submitting George Andrews's expert report, but prior to Defendants' deposition of Andrews and before they submitted their Motion for Summary Judgment.

---

[4]Office of Professional Standards.

Although Kunz's failure to provide copies of the transcript earlier violates Rule 26, the error is harmless. Defendants had sufficient time to review the twenty brief transcripts before submitting their motion for summary judgment, and they were free to argue (as they did) that the transcripts are not evidence that the *nolle prosequi* is indicative of Kunz's innocence. Kunz's failure does not merit exclusion of the evidence in weighing Defendants' Motion for Summary Judgment.[5] *Fed. R. Civ. P. 37(c)(1)*; *Sherrod v. Lingle*, 223 F.3d 605, 612 (7th Cir. 2000) ("Rule 37 precludes the trial judge from imposing the exclusion sanction unless it finds the party's failure to comply with Rule 26(a) was both unjustified and harmful to the opposing party"). To the extent that Kunz's Rule 56 Statement of Facts and his arguments regarding summary judgment rely on the transcripts as evidence, they are not stricken.

### ii. Motion to Bar Plaintiff's Expert Opinion

Kunz also defends against summary judgment on the basis of an expert opinion proffered by George Andrews, a former Assistant State's Attorney for Cook County and currently a criminal defense attorney in private practice. Andrews is prepared to offer three opinions with respect to Kunz's claim of malicious prosecution: first, an opinion regarding the state's decision to switch its election from the PSMV to the PCS charge; second, an opinion regarding the consequences of the PSMV charge in terms of Kunz's detention; and third, an opinion on the maximum sentence Kunz would have received for the PCS charge absent the PSMV charge. On the first topic, Andrews opines that several factors indicate that prosecutors entered the *nolle*

---

[5] I note, however, the absurdity of Kunz's explanation for counsel's decision not to provide copies of the transcripts earlier in the litigation. Kunz's claim – that counsel failed to provide copies of the transcripts to the Defendants for fear of depriving court reporters of an opportunity to "make a living" – is both unavailing and illogical.

*prosequi* on the PSMV charge for reasons indicative of Kunz's innocence. These include the "unusual" nature of the State's decision to switch the election from the PSMV to the PCS charge, the "mounting pressure" from the criminal court judge for the City of Chicago to produce the O.P.S. investigation file, and the State's decision not to prosecute Kunz on the PSMV charge after obtaining a conviction on the PCS charge. Defendants challenge Andrews's opinion as an invalid basis for demonstrating Kunz's innocence on the PSMV charge.

In the Seventh Circuit and elsewhere, "the admission of expert testimony is specifically governed by [Rule 702] and the principles announced in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)." *Smith v. Ford Motor Co.*, 215 F.3d 713, 717 (7th Cir. 2000). Expert testimony must satisfy the following standard:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Fed. R. Evid. 702*. This standard requires that I evaluate both the reliability and the relevance of Andrews's testimony. *Daubert*, 509 U.S. at 589.

The reliability of an expert depends upon both the expert's qualifications and the methodology employed by that expert. *Smith*, 215 F.3d at 718; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999). An expert's qualifications need not stem from academic pedigree alone. Both the *Federal Rules* and this Circuit's case law recognize practical experience and training as bases of expertise. *Fed R. Evid. 702* (an expert may be qualified by

"knowledge, skill, experience, training, or education"); *and Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996) ("genuine expertise may be based on experience or training").

I have no doubt that Andrews is an accomplished attorney with deep insight into the inner workings of the Cook County State's Attorney's office. In his 14-year tenure with that office, Andrews tried more than 55 felony cases to jury verdicts, including four capital cases. During that time, Andrews served as First Chair of the Trial Division, Second Chair in Special Prosecution Unit narcotics cases, Trial Supervisor in the Felony Review Unit and First Chair of the Felony Trial Division. Andrews's experience and training as an Assistant State's Attorney for Cook County is a legitimate basis for offering an opinion on the general practices of that department during the period of his employment. However, Andrews is attempting to offer an expert opinion on the practices of that department as they related to a specific case arising after his tenure: the prosecution of Jeremy Kunz for possession of a stolen motor vehicle and possession of a controlled substance. The decision of whether and how to prosecute an individual charged with multiple crimes, particularly when one charge involves a co-defendant, is the hallmark of what we commonly refer to as prosecutorial discretion. Andrews's experience does not provide the necessary qualifications under Rule 702 to opine on the reasons for the Assistant State's Attorney's decision to change its election in Kunz's case; Andrews is simply not in a position to determine with any reliability why prosecutors chose to enter a *nolle prosequi* on the PSMV charge.

This leads me to Defendants' second challenge to Andrews's opinions, which is the methodology on which Andrews relied to reach his conclusions. *Fed. R. Evid. 702* permits expert testimony only when it "is based upon sufficient facts or data . . . is the product of reliable

principles," and when the expert has "applied the principles and methods reliably to the facts of the case." With respect to reasons for the *nolle prosequi*, for which Kunz must demonstrate a genuine issue of material fact, Andrews offers an opinion that the State entered the *nolle prosequi* because prosecutors were concerned that they would be unable to prove their case against Kunz. Evidence to this effect would raise an issue of material fact sufficient to avoid summary judgement on the second contested element of the *Swick* test.

Andrews's opinion is based on his review of the following: the court file from Kunz's PSMV charge; the March 22, 1999 arrest report; the PSMV complaint filed against Kunz; the transcripts discussed at length above; the O.P.S. investigation file; and Kunz's criminal history record. Andrews also relied on his professional experience in reaching his conclusions. Andrews does not assert that his opinions are iron-clad; in fact, he acknowledges that any number of contributing factors could have affected the State's decision to enter a *nolle prosequi* in Kunz's case.

Despite his qualifications, I believe that Andrews's opinion that the State entered a *nolle prosequi* because it believed it could not prove its case is simply too speculative to be relied upon as evidence on a motion for summary judgment.[6] *See Krocka v. City of Chicago*, 2001 WL 290399 (N.D. Ill. Mar. 22, 2001) (holding that, in former police officer's case alleging retaliatory discharge, expert testimony by a 38-year police veteran and former Assistant Deputy Superintendent in charge of Internal Affairs lacked proper methodology and relied on improper speculation; expert intended to offer opinion, based on personal experience and review of investigation documents, that an internal investigation leading to discharge was biased). To the

_____

[6] Because I find Andrews's opinion too speculative, I need not address the relevance of his opinion.

10

extent that Andrews's opinion attempts to offer evidence of a favorable termination of Kunz's PSMV charge, it is too speculative, and therefore cannot support Kunz's defense against summary judgment.[7]

## B. Evidence Supporting Kunz's Claim of Malicious Prosecution

I must now consider whether Kunz has offered evidence demonstrating a genuine issue of material fact with respect to the second (and if necessary, fifth) element of the *Swick* test. I do so considering both the *nolle prosequi* order and the criminal court transcripts. Kunz asserts that the transcripts demonstrate a favorable termination of his PSMV case or, at the very least, raise a genuine issue of material fact sufficient to stave off summary judgment. My review of the transcripts reveals the following facts.

First, from the start of Kunz's criminal case, his attorney sought access to the City's O.P.S. investigation file as evidence for a motion to suppress that the attorney intended to file with the court. *Pl. Ex. S*, Oct. 13, 1999 at 2. In response, the State informed the criminal court judge that the O.P.S. investigation might last for up to two years. *Id.*, Nov. 9, 1999 at 3. The criminal court judge issued a subpoena ordering the State to produce witness statements from the investigation to Mr. Kunz's attorney; the judge subsequently received and reviewed the O.P.S. file (as it existed at the time) *in camera* and provided the file to both parties. *Id.*, Jan. 21, 2000 at 2.

---

[7]As discussed in the following section, Kunz has failed to meet the second element of the *Swick* test; therefore, I need not consider whether Kunz has offered evidence of damage, the fifth prong of the *Swick* test. Because Andrews's remaining opinions address the aspect of damages that Kunz suffered as a result of the PSMV charge, the issue of the admissibility of these opinions is moot.

More than once, Kunz's attorney informed the judge that he believed the State was violating the subpoena by not producing all documents related to the O.P.S. investigation. *Id.,* Jan. 28, 2000 at 3-4. In April 2000, after documents were produced to Kunz, his attorney requested additional time to review them and to pursue additional interviews with possible witnesses. *Id.,* Apr. 5, 2000 at 2. The court, however, indicated its unwillingness to grant Kunz's attorney additional time to review documents related to the O.P.S. investigation and declared its intent to move forward with Kunz's prosecution in the very near future. *Id.* at 3. Between April and June, 2000 the State delayed in responding to additional subpoenas. *Id.,* May 24, 2000 at 2 and Jun. 2, 2000 at 2.

On June 19, 2000 Kunz appeared before the criminal court judge on the PSMV and PCS charges. The prosecutor switched the State's election from the PSMV to the PCS charge, stating:

"the investigation on Mr. Kunz was undertaken concerning the previously elected case, the automobile case is, again, reaching another roadblock or deadend and I think that we discussed with them, with the attorneys, the possibility of changing the election so that it didn't matter where Mr. Kunz and Mr. Weisinger [Kunz's high-school age co-defendant on the PCS charge] are charged together could be the new elected case so that Mr. Weisinger would not be caused to continue coming here to wait for the outcome of the Kunz solo case." *Id.* Jun. 19, 2000 at 3.

When Kunz's attorney indicated his willingness to split the two cases, especially in light of his continued pursuit of materials related to the O.P.S. investigation of the PSMV charge, the judge noted that, "at this point we need to find out who to bring in here to respond to this. Its become so lengthy that the State has changed the election." *Id.*

Subsequent transcripts indicate that when Kunz was sentenced on the PCS charge, the State raised the outstanding PSMV charge as grounds for aggravating Kunz's sentence on the PCS charge. *Id.,* Nov. 15, 2000 at 2-3. Announcing the sentence, the judge noted that "based on the facts of the case, and matters heard in aggravation, this Court will sentence you to three

years." *Id.* at 4. Immediately thereafter, the prosecutor entered a request to *nolle prosequi* the PSMV charge. *Id.* at 5. Kunz's counsel asked that the record reflect his demand for a trial on the PSMV charge. In response, Judge Sutker-Dermer noted, "[f]ile reflects that case was used in aggravation on the other sentence." *Id.*

According to Kunz, the transcripts demonstrate that the State was actively avoiding its obligation to produce potentially exculpatory evidence (the O.P.S. investigation file). Further, Kunz believes that the transcripts show that the State did not believe it could win a conviction on the PSMV charge because prosecutors spoke of "dead ends" and switched their election in order to pursue the less serious PCS charge rather than the more serious PSMV charge. Defendants believe that the transcripts demonstrate that Kunz's case was delayed primarily due to decisions and errors by his counsel, and that the State switched its election out of concern for Kunz's high-school aged co-defendant on the PCS charge. Defendants note that if the State was truly concerned about revealing the contents of the O.P.S. file, it would have entered the *nolle prosequi* immediately after Kunz subpoenaed the file or alternatively, would have pushed for a quick trial. Moreover, the judge appears to have relied on the PSMV charge in enhancing Kunz's sentence on the PCS charge.

Whatever shadows they cast on the prosecution's strategy, the transcripts do not offer evidence of the specific reason for the *nolle prosequi*. Rather, they demonstrate only that the *nolle prosequi* was entered after the pending PSMV charge was offered and relied on to enhance Kunz's sentence on the unrelated drug charge. This is not sufficient to meet the plaintiff's burden on summary judgment to provide evidence raising a genuine issue of material fact. *Cf. Treece v. City of Naperville*, 1998 WL 142391 at *6 (N.D. Ill. Mar. 25, 1998) (motion for summary judgment on malicious prosecution charge denied when plaintiff submitted evidence

suggesting termination of proceedings in her favor in the form of testimony by both defense counsel and the prosecutor); *and Mizwicki v. City of Naperville*, 1999 WL 413501 at *10 (N.D. Ill. Jun. 2, 1999) (motion for summary judgment on malicious prosecution charge denied when plaintiff submitted evidence of innocence consisting of testimony from a witness involved in the prosecution); *and Brown v. McGee*, 2000 WL 821712 at *3 (N.D. Ill. Jun. 23, 2000) (motion for summary judgment on malicious prosecution charge denied when plaintiff presented evidence in the form of an affidavit from defense counsel averring that the Assistant State's Attorney advised the judge that the reason for the *nolle prosequi* was the state's inability to prove its case at trial).

In the absence of evidence that raises a genuine issue of fact with respect to the State's reasons for entering the *nolle prosequi* order, Kunz fails to meet the burden placed upon him by *Swick*. Therefore, I need not consider the other elements of the *Swick* test, and specifically, whether Kunz has offered sufficient evidence of damages as a result of the prosecution. Defendant's Motion for Summary Judgment on the count of malicious prosecution is granted.

### Count IV: Failure to Provide Timely Medical Assistance

In order to survive Defendant's Motion for Summary Judgment on this claim, Kunz must offer evidence of material facts demonstrating both that his medical condition was objectively serious and that the Defendants were deliberately indifferent to his serious medical need. The Seventh Circuit has held that an objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Minor scrapes and bruises for which treatment consists of simple washing is not serious medical need; nor is every sensation of pain actionable. *See e.g., Clark v. Spey*, 2002 WL 31133198 at *4 (N.D. Ill. Sept. 26, 2002). However, Kunz suffered not just multiple bruises and

abrasions to his face but a broken rib, for which he received pain medication. The fact that there is generally "no treatment" for a broken rib (as Defendants repeatedly emphasize) other than pain-killers does not render Kunz's injury any less objectively serious.

Defendants cite to *Gutierrez v. Peters* to suggest that the only proper evidence in analyzing failure to provide medical care claims is the medical record. 111 F.3d 1364, 1372 n. 7 (7th Cir. 1997). In fact, the *Guitierrez* footnote cited by Defendants suggests only that the "'seriousness' determination will often be ill-suited for resolution at the pleading stage," and is more appropriate for summary judgment proceedings, "at which point a fully developed medical record will *inform* the court." *Id.* (emphasis added). Even if Kunz were bound by the limitation Defendants suggest, the Thorek medical records documenting a broken rib are sufficient evidence of a serious medical condition to survive a motion for summary judgment. The bruises to Kunz's face and eyes as well as the treatment by additional physicians at Cermak Hospital more than 40 hours after Kunz's arrest and roughly 24 hours after his initial treatment at Thorek raise a genuine issue of material fact regarding the seriousness of Kunz's condition. A jury could reasonably find based on this evidence that Kunz's condition was objectively serious. *See e.g., Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) (issue of whether prisoners "were in sufficient pain to entitle them to pain medication within the first 48 hours . . . was an issue for the jury" where plaintiffs had sustained cuts, severe muscular pain, and a burning sensation in their eyes and skin after being beaten and maced by prison guards).

However, Kunz must also demonstrate that the Defendants were deliberately indifferent to his medical need. *Jackson v. City of Chicago*, 2001 WL 1286804 at *5 (N.D. Ill. Oct. 23, 2001). Specifically, Kunz must show that the Defendant officers must have "known of and disregarded 'an excessive risk to [his] health.'" *Williams v. Elyea*, 163 F. Supp. 2d 992, 998

(N.D. Ill. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Kunz's contact with the individual defendant officers ended upon his arrival at the city lock-up; Defendants assert that he must demonstrate deliberate indifference between the time of his arrest and his arrival at the lock-up at approximately 1:50 AM on March 23, 1999.

Defendants argue that the maximum four-hour window during which the Defendants were in contact with Kunz (and the shorter time during which arresting Officers Covelli, Clark, Nasser, Mota, Flechsig and Gillespie were in Kunz's presence) was *de minimus* and cannot form the basis for a constitutional claim of deliberate indifference. For this proposition, Defendants cite to *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995), in which the plaintiff prisoner waited two hours to receive medical care after suffering a broken hand. However, the plaintiff in *Murphy* had not alleged that the defendant law enforcement officers delayed taking him to a doctor in knowing disregard of an excessive risk to his health or well-being; rather, the delay resulted from the time required to secure permission to take the plaintiff to the hospital. The Seventh Circuit's limited holding was that two hours was not "an unreasonably long wait to x-ray, examine, and possibly cast a fractured extremity" under these circumstances. *Id.*

In the instant case, Kunz was kicked during his arrest and was beaten in the face and knocked unconscious during an interrogation following the arrest, yet he was not transported to Thorek until late in the afternoon the following day. Although the individual Defendants did not have contact with Kunz beyond the initial four hours following his arrest, their failure to request medical assistance at that time contributed to the overall delay in receiving medical care. Their failure to request medical assistance after witnessing the manner of his arrest (Officers Covelli, Clark, Nasser and Mota), his injuries subsequent to the arrest (Officers Flechsig and Gillespie and possibly Officers Clark and Nasser), or after participating in his interrogation (Officer

16

DeFelice) could constitute deliberate indifference. Whether a delay of four hours or several more, the time during which Kunz's injuries were not treated could constitute an unreasonable period and render Defendants' failure to seek help deliberate indifference.

Defendants also argue that Kunz cannot demonstrate deliberate indifference because he cannot show that Defendants were in a position to infer an "excessive risk" to his health given the nature of his injuries, particularly since Kunz failed to request medical assistance until he was placed in the lock-up. Defendants' arguments conveniently overlook their role in causing Kunz's injuries. The subjective standard of "deliberate indifference" is sufficiently flexible to allow me to consider facts suggesting that a defendant caused the injuries of which a suspect or inmate complains. *See e.g., Walker v. Graham*, 2000 WL 875502 at *5 (N.D. Ill Jun. 28, 2000) ("[s]evere pain can be a serious condition to which jailers may not be indifferent . . . particularly if they caused it") (citation omitted). Kunz offers evidence that suggests his broken rib was the result of kicks inflicted on him by police at the time of his arrest; he also offers evidence that he was in severe pain and lost consciousness during the interrogation where he was beaten multiple times by the interrogating officer. It is unreasonable to require Kunz to have demanded help from the very people who caused his injuries; his failure to request medical assistance from the Defendants does not mitigate their otherwise deliberate indifference to his condition.

The Defendants were in a position to know that Kunz had a serious medical need that resulted from the manner of his interrogation and possibly his arrest. The Seventh Circuit has held that when a defendant causes injuries by using excessive force, "the requirements for proving deliberate indifference to the medical needs of the beaten [plaintiff] ought to be relaxed somewhat . . . [b]eating a person in violation of the Constitution should impose on the assailant a duty of prompt attention to any medical need to which the beating might give rise." *Cooper*, 97

17

F.3d at 917. Because each of the Defendants was present at the time of Kunz's arrest or was present for his interrogation, none can win summary judgment on Kunz's claim that they were deliberately indifferent to his need for medical attention.

Finally, Defendants note that Kunz is obligated to offer evidence that shows the delay in medical care detrimentally affected his condition. *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996). Kunz asserts that his broken rib caused him "excruciating" pain and made it difficult to breathe. Defendants suggest that there is no evidence that Kunz suffered from excruciating pain between the time of his injuries and the eventual administration of pain killers, particularly as the Thorek medical records state that Kunz's pain level was "mild" and that he was prescribed a pain-killer at an over-the-counter dosage. However, Kunz's affidavit regarding his pain and the treating physicians' decisions to provide pain-killers raises an issue of material fact regarding the detriment to his health, which a fact-finder is entitled to consider. As noted in *Cooper*, pain is a "uniquely subjective experience" and Kunz is entitled to rely on the Thorek and Cermak medical records to argue that the delay in medical care detrimentally affected his condition. *Cooper* at 917. As Kunz has offered evidence sufficient to create a genuine issue of fact, Defendants' motion for summary judgment on this claim is denied.

For these reasons, summary judgment is GRANTED with respect to Kunz's claim of malicious prosecution, and DENIED with respect to his claim of denial of medical attention.

ENTER:

James B. Zagel
United States District Judge

DATE: DEC 2 3 2004

18