UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEREMY KUNZ,

    Plaintiff,

    v.

CITY OF CHICAGO, et al.,

    Defendants.

No. 01 C 1753
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Richard DeFelice, a former Chicago Police Officer, was found liable of using excessive force against Plaintiff Jeremy Kunz during Kunz's arrest and interrogation in March 1999. The same jury that found DeFelice liable awarded Kunz $10,000 in compensatory damages and another $250,000 in punitive damages.[1] Officer DeFelice now challenges the award of punitive damages as unconstitutional.

In 1996, the Supreme Court opened the gates to wider judicial review of punitive damages. *BMW of North America Inc. v. Gore*, 517 U.S. 559 (1996) (reversing, for the first time, a state's award of punitive damages as unconstitutionally excessive). The novel outcome of that case stemmed from a growing body of Supreme Court jurisprudence that raised the specter of constitutional limits for punitive damages awards. Prior cases had established that punitive damages could be so grossly excessive in relation to the state's interest in punishment and deterrence as to violate the Due Process Clause of the Fourteenth Amendment. *TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 456 (1993); *see also Pacific Mut. Life Ins. Co. v.*

---

[1]The jury also found unknown officers liable for the use of excessive force against Kunz and awarded another $15,000 in compensatory damages.

*Haslip*, 499 U.S. 1, 20-21 (1991) (requiring "meaningful and adequate review by the trial court whenever a jury has fixed the punitive damages" and "appellate review [that] makes certain that the punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition"). In *Gore*, the Supreme Court stepped directly into the fray and offered courts a specific test to determine whether persons subject to punitive damages had fair notice of the potential scope of those damages. 517 U.S. at 574-75. Henceforth, the reasonableness of punitive damages was to be measured by "the degree of reprehensibility" of the liable party's conduct; "the disparity between the harm or potential harm" suffered by the aggrieved party; and the difference between the remedy awarded by the jury and "civil penalties authorized or imposed in comparable cases." *Id*. at 575.

The *Gore* test altered the landscape of punitive damages awards in an era in which those damages had begun to look like winning lottery tickets.[2] *See, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (applying *Gore*'s guideposts and reversing a punitive damages award of $145 million, observing that the case was "neither close nor difficult"). It has thrust courts – district and appellate[3] – into the fact-filled landscape of culpability, relative harm and comparative damages. This case is no different.

In finding that Officer DeFelice used excessive force against Mr. Kunz, the jury accepted the Plaintiff's testimony over the contradictory statements made by DeFelice and his fellow

---

[2]*See* W. Kip Viscusi, *The Blockbuster Punitive Damages Awards*, 53 Emory L.J. 1405, 1408 (2004) (analyzing 64 punitive damages awards exceeding $100 million and concluding that there has been "explosive growth" of these "blockbuster" awards).

[3]In a subsequent decision the Court imposed upon appellate courts the obligation to review, *de novo*, district courts' determinations of the constitutionality of punitive damage awards. *Cooper Indus. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001).

officers. Kunz testified that DeFelice punched him in the face after his arrest, while he was handcuffed and seated for interrogation. Intentional, violent conduct is a weighty consideration in evaluating the reasonableness of punitive damages. *See State Farm*, 538 U.S. at 419 ("[t]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct"); *and Gore*, 517 U.S. at 576 (addressing violence as an aspect of reprehensibility). The Seventh Circuit takes a similar stance on physical violence as a basis for punitive damages. *See e.g., Cooper v. Casey*, 97 F.3d 914, 919 (7th Cir. 1996) (upholding punitive damages twelve times greater than compensatory damages and observing that a "wanton and cowardly attack" on shackled prisoners was an appropriate basis for punitive damages). That such physical violence was perpetrated by a Chicago Police officer contributes to the reprehensible nature of the conduct. *See Waits v. City of Chicago*, No. 01 C 4010, 2003 WL 21310277, at *4 (N.D. Ill. June 6, 2003) ("[t]he fact that defendants were Chicago police officers only contributes to the particularly repulsive nature of their offense").

Officer DeFelice argues that the jury's failure to find him liable on Kunz's related claim (alleging the denial of medical care) mitigates against large punitive damages. He implies that a finding of liability on that count would indicate more reprehensible conduct with respect to the count on which he was found liable. I think this argument is mis-directed. Whether Kunz's injuries required medical care affects the compensatory damages for which he is eligible, and might bear upon the analysis of whether the punitive damages are grossly disproportionate to the compensatory damages. However, Kunz's failure to win a verdict of liability on his medical care claim says little about the nature of DeFelice's conduct on the charge of excessive force.

3

Under the *Gore* analysis I must also consider any disparity between the $250,000 in punitive damages awarded Kunz and the actual or potential harm he suffered. 517 U.S. at 575. While the Court has not identified a magic figure beyond which punitive damages are presumptively unconstitutional, defendants have seized hold of the Court's various discussions of the appropriate ratio of punitive to compensatory damages[4] as grounds for overturning large punitive damages awards. This Defendant relies upon the Court's statement in *State Farm* that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process" in his quest for remittitur of the punitive damages award. *State Farm*, 538 U.S. at 425.

"The Supreme Court, however, has never held that simple mathematical ratios are the be-all and end-all in punitive damages analysis." *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 736 (7th Cir. 1998). Rather, ratios "are instructive . . . [and] demonstrate what should be obvious: Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution." *State Farm*, 538 U.S. at 425. No one ratio can be applied to all situations, particularly given the range of harm and suffering eligible for punitive damages. *See Gore*, 517 U.S. at 582-83 ("low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages"). Moreover, the Seventh Circuit has cautioned against too rigid an application of *State Farm's*

---

[4]*See, e.g., Gore*, 517 U.S. at 581-82 (observing that punitive damages quadrupling compensatory damages was often considered appropriate); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23 (1991) (punitive damage award more than four times greater than compensatory damages approached line demarcating unconstitutionality).

4

suggested "single-digit ratio" standard. *See Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 676 (7th Cir. 2003) ("[t]he Supreme Court did not, however, lay down a 4-to-1 or single-digit-ratio rule–it said merely that 'there is a presumption against an award that has a 145-to-1 ratio'") (citation omitted). Ultimately, "courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *State Farm*, 538 U.S. at 426.

I am also wary of applying mathematical ratios to cases involving the violation of civil rights where there may be limited economic damages. *Cf. Mathias*, 347 F.3d at 676-77 (a case involving bed bugs, rather than civil rights violations, but instructive for its discussion of situations in which compensatory damages are difficult to measure and where greater punitive damages might be appropriate). I find it more useful to consider punitive damage awards in cases involving plaintiffs who suffered similar injuries as the result of similar conduct, though I am well aware that rarely does an ideal comparator case exist. In this case, Kunz testified that Officer DeFelice punched him in the face multiple times, causing him to lose consciousness. Photos of Kunz taken after his arrest show bruising to his face, but he suffered no permanent physical injuries. Kunz testified to long-term emotional damage, but not to the extent that he required psychological or psychiatric care.

Comparable cases show a wide variety of punitive damage awards, some subject to remittitur and others not. As a whole, however, the cases demonstrate considerably lower punitive damages awards, both in dollar amount and relative to the compensatory damages awarded. *See Cooper*, 97 F.3d at 919-920 (upholding punitive damages award against each defendant prison guard who repeatedly kicked, beat and used mace against plaintiffs for a total of

5

$60,000 in punitive damages per plaintiff); *Robinson v. City of Harvey*, No. 99 C 3696, 2003 WL 21696191 (N.D. Ill. July 21, 2003) (awarding $25,000 in compensatory damages and $250,000 in punitive damages to plaintiff shot in buttocks by police officer where plaintiff suffered no permanent physical damage); *Waits*, 2003 WL 21310277 (reducing punitive damage awards from $2 million (aggregate) to $45,000 when compensatory damages of $15,000 were awarded to a plaintiff hit 15-20 times in the face by police); *Terrell v. Village of Univ. Park*, No. 92 C 3320, 1994 WL 30960 (N.D. Ill. Feb. 1, 1994) (awarding $10,000 in punitive damages for plaintiff arrestee who was slapped and slammed against a police car); *Burks v. Harris*, No. 90 C 0728, 1991 WL 140114 (N.D. Ill. July 22, 1991) (awarding $6,500 in punitive damages against defendant officers who struck plaintiff below the eye with a police radio); *and Grosse v. Van Milligen*, No. 83 C 9334, 1987 WL 16242 (N.D. Ill. Aug. 21 1987) (awarding $10,000 in punitive damages against an officer who grabbed the plaintiff, threw him to the ground, and punched him multiple times).

In a case in which a visitor to a prison was beaten viciously by prison staff, the Court remitted $2 million in punitive damages against three defendants to approximately $200,000. *Ibanez v. Velasco*, No. 96 C 5990, 2002 WL 731778, at *16 (N.D. Ill. Apr. 25, 2002). However, the jury in that case awarded $2.5 million in compensatory damages. *Id*. The compensatory damages in this case were much smaller (and correspondingly, the physical injuries suffered by plaintiff less severe). Plaintiff, relying on *Matthias*, 347 F.3d at 676, argues that this is a case where the "small" compensatory damage award merits a larger, rather than smaller, punitive damage award to deter future, similar conduct and appropriately punish DeFelice. In light of Plaintiff's injuries, I disagree. *See Waits*, 2003 WL 21310277, at *7 (finding that award of

6

$15,000 in compensatory damages was "substantial" and proposing a remittitur of $2 million in aggregate punitive damages to $45,000). *Cf. Jones v. Sheahan*, No. 99 C 3669, 2003 WL 22508171, at *16 (N.D. Ill. Nov. 4, 2003) (observing that $25,000 in compensatory damages was neither so substantial that due process limited punitive damages to the amount of compensatory damages, nor so low as to permit a double-digit multiplier, and ordering remittitur of damages against the defendants who caused dislocated shoulder and broken wrist from $500,000 and $250,000 to $100,000 and $50,000 respectively). These cases suggest that some reduction of the punitive damages assessed against Officer DeFelice would be appropriate.

Officer DeFelice points to the statutory penalties for battery as further evidence that remittitur is necessary for the verdict to comport with constitutional requirements of due process. Under *Gore*'s three-part test, I must consider whether there is a gross disparity between the punitive damages award against Officer DeFelice and sanctions for similar conduct. 517 U.S. at 583. Under Illinois law, the fine authorized for battery (a Class A misdemeanor) is $2,500 and the fine for felony battery is $25,000. 730 ILCS 5/5-9-1(a)(1)-(2). The punitive damages awarded by the jury are 10 times greater than the statutory penalty. DeFelice discounts, however, the cost of any criminal penalties that could be imposed for the conduct for which he was found liable, though the burden for imposing criminal sanctions is higher than the one imposed in this case. *See Ibanez*, 2002 WL 731778, at *14 (observing that *Gore* requires consideration of both civil and criminal penalties). Moreover, as Plaintiff observes, I need not compare the maximum statutory penalty to the punitive damages award on a dollar-to-dollar basis;[5] at the very least, the

---

[5] Nor is battery the sole charge that could be considered for comparative purposes; statutes prohibiting conspiracy would also be relevant to this analysis.

$25,000 statutory penalty put Officer DeFelice on notice that his conduct was serious and subject to serious sanction. In this case, the third element of the *Gore* analysis does not compel either drastic remittitur of the damages nor ironclad adherence to the jury's assessment of the appropriate punitive damage.

Finally, Officer DeFelice demands that I take into consideration his alleged financial difficulties in reviewing the award of punitive damages. His request is not beyond the pale. *See Ibanez*, 2002 WL 731788 at *14-15 (remitting damages in light of the fact that the award far exceeded defendants' ability to pay); *and Waits*, 2003 WL 21310277, at *6-7 (defendants' salary, an issue not addressed in *Gore*, is relevant to the petition for remittitur). Kunz protests that DeFelice waived this argument by failing to provide any testimony about his assets or debts to the jury or during discovery. Courts have refused to admit such information on this ground. *See Jones v. Sheahan*, 2003 WL 2250817, at *20, n. 15 (refusing to remit punitive damages because of defendant's financial status when "the defendants chose not to offer evidence of financial status at trial"). *Cf. Kemezy v. Peters*, 79 F.3d 33, 36 (7th Cir. 1996) (observing that defendants gamble with a "double or nothing" outcome when they fail to offer evidence of net worth for fear the jury will interpret this evidence as a concession on the issue of liability). However, it is clear that evolving jurisprudence on remittitur of punitive damages has affected litigation strategies.[6] I

---

[6]This emphasis on the constitutionality of punitive damages has altered the dynamics of trial. In the past, officers accused of excessive force would often take the stand to testify about their limited financial means. Such testimony often led to the bi-furcation of punitive damages from liability and compensatory damages, though the same jury would often address both issues. Bi-furcation offers plaintiffs two significant advantages (notwithstanding instructions to the contrary). First, a jury may be more likely to increase the compensatory damage award based on their perception of outrageous conduct. Second, juries are determining compensatory damages prior to any testimony from the defendants regarding their inability to pay – testimony that might otherwise limit the award of compensatory damages.

am willing to consider testimony regarding DeFelice's ability to pay punitive damages, though I will not accept the unsupported statements offered in his affidavit. Kunz will have an opportunity to depose DeFelice and examine his financial records; both sides may then present evidence to argue for or against remittitur based on DeFelice's ability to pay. Though I may reduce the punitive damages on the basis of these additional facts, I will do so bearing in mind the fact that DeFelice will not pay any of the compensatory damages awarded by the jury and the goals of deterrence and punishment punitive damages are intended to further. *See State Farm*, 538 U.S. at 416 ("punitive damages serve a broader function . . . they are aimed at deterrence and retribution").

In conclusion, the *Gore* factors suggest that some remittitur of punitive damages would be appropriate. As testimony regarding DeFelice's financial status will assist in my

---

In this case, bifurcation of compensatory and punitive damages was not sought, and the defendant against whom punitive damages were awarded testified only about his activities on the night of the plaintiff's injuries, not about his financial status. Under other circumstances, I might agree with a plaintiff who argued that a defendant had waived the opportunity to raise inability to pay as a defense to punitive damages by failing to present testimony to that effect at the time of trial. However, the Court's evolving jurisprudence on punitive damages awards and its test for constitutionality has, I believe, created an atmospheric shift in the litigation of punitive damages. The cases discussed above and the creation of standards for judicial review of juries' punitive damages awards open the door to judicial review of evidence juries might not have considered when making its determination. For that reason, I will permit the defendant in this case to present (specific, supported) evidence of his ability to pay before reaching a decision on his request for remittitur.

Were the judicial power over punitive awards an old and familiar part of the legal landscape, I think a plaintiff would ask to know in advance of trial whether the defendant intended to raise his lack of assets in mitigation of punitive damages so that both plaintiff and defendant could make a better-reasoned judgment about bifurcation and trial strategy. The procedure I adopt here is justified only by the transitional nature of the current law on punitive damages: while the principles of review of punitive damages are relatively well-described, their application at the trial level and their impact on the procedural landscape is far less clear.

determination of the appropriate amount of remittitur, Defendant's Rule 59 Motion is Entered and Continued pending discovery on the issue of his financial status and additional briefing by the parties.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: October 24, 2005