# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEREMY KUNZ, | |
| Plaintiff, | |
| v. | No. 01 C 1753 |
| CITY OF CHICAGO, et al., | Judge James B. Zagel |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeremy Kunz filed a 42 U.S.C. § 1983 suit against the City of Chicago and several police officers, including Officer Richard DeFelice. Kunz won a jury verdict against DeFelice and the City and was awarded compensatory and punitive damages.[1] Kunz now seeks to present an additional theory of liability to a jury in order to secure an additional damages award.[2] Specifically, Kunz seeks compensation for the 20 months he was held in detention after his arrest. Kunz claims that his extended detention was a direct result of Officer DeFelice's use of excessive force against him: he argues that but for DeFelice's physical violence, he would not have falsely confessed to committing the crime of possessing a stolen motor vehicle ("PSMV"); that but for his confession, prosecutors would not have had grounds to charge him with PSMV; and that but for the PSMV charge, he would not have been detained for 20 months.

---

[1] Defendant DeFelice's Rule 59 motion is still pending.

[2] Kunz intended to present this theory at his initial trial, but I granted Defendants' motion to exclude both his argument and the supporting evidence with the caveat that Kunz could raise his argument at a later point if he established liability at trial. Having secured a verdict in his favor, Kunz was entitled to file this motion.

Kunz argues that he is entitled to pursue these additional damages based on common law tort theory: by using force to coerce a false confession, DeFelice proximately caused Kunz's extended detention. Nevertheless, Kunz's initial claim was based on § 1983, under which he must establish a constitutional (or statutory) violation to seek an award. Kunz argues that he has done just that, having successfully litigated a § 1983 excessive force claim. Excessive force claims fall within the scope of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386 (1989). Yet damages for Fourth Amendment violations are typically limited to the period prior to arraignment. *See, e.g., Wiley v. City of Chicago*, 361 F.3d 994, 998 (7th Cir. 2004). Kunz's pursuit of damages extending from his forced confession is in tension with most cases involving Fourth Amendment excessive force claims.

There is some support for Kunz's proximate cause argument. In *Jones v. Chicago*, 856 F.2d 985 (7th Cir. 1988), the Court of Appeals for the Seventh Circuit ruled that a plaintiff seeking damages for time spent in detention subsequent to a probable cause hearing was entitled to present evidence to the jury that, absent the misconduct of the defendant police officers, he would not have been arrested or charged with a crime. The court observed that "a prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but proceed to trial–none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision." *Id*. at 994. "If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute

2

him. They cannot hide behind the officials whom they have defrauded." *Id.*[3] *See also Kerr v. City of Chicago*, 424 F.2d 1134, 1137-38 (7th Cir. 1970) (plaintiff could pursue suit for damages based on allegations that police coerced involuntary confession through excessive force, after which plaintiff was detained for 18 months). *Cf. Gauger v. Hendle*, 349 F.3d 354, 358 (7th Cir. 2003), *overruled in part on other grounds by Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006) ("if police falsify their reports in a successful effort to persuade the prosecutors to prosecute a suspect, they have violated his civil rights and he can sue the police without worrying about immunity") (citations omitted)).

Nonetheless, Kunz must base each claim for damages under § 1983 on a constitutional violation. As DeFelice's liability was founded on a Fourth Amendment violation, that is where this analysis begins. Defendants insist that liability must be grounded in the Fourth Amendment, and point to a line of cases generally limiting the scope of excessive force damage to the period prior to arraignment. *See, e.g.*, *Wallace*, 440 F.3d at 425 ("[w]hen a person's Fourth Amendment rights have been violated by a false arrest, the injury occurs at the time of the arrest. Thus, an individual is entitled to recover only for injuries suffered from the time of arrest until his arraignment") (citing *Wiley*, 361 F.3d at 998). *See also Jones*, 856 F.2d at 994 (observing that at some point subsequent to arrest, the question of whether continued confinement or prosecution is unconstitutional passes from the 4th Amendment to the due process clause of the 14th

---

[3]*But see Duncan v. Nelson*, 466 F.2d 939 (7th Cir. 1972) (an earlier decision examining § 1983 damages through the lens of common law tort liability and concluding that a forced confession was not the proximate cause of a subsequent conviction and lengthy incarceration). In *Duncan*, the trial judge's admission of the coerced confession into evidence was a superceding cause of the conviction and incarceration; moreover, the police officers could not have reasonably foreseen that the trial judge would admit the inadmissible confession. *Id.* at 942-43.

3

Amendment). These cases, however, center on false arrest allegations, not the use of force in a post-arrest, custodial interrogation. In *Gauger v. Hendle,* the Court of Appeals for the Seventh Circuit considered Gary Gauger's allegations that police arrested him without probable cause and committed perjury at his murder trial. 349 F.3d at 356-58. Gauger did not claim that the police violated the Constitution during his interrogation, and therefore the Seventh Circuit did not reach the issue of whether his statements were coerced and, by extension, what damages Gauger might be entitled to as a result of that conduct. *Id*. at 358. Kunz does cite a passage of the decision suggesting that officers might be liable for their post-arrest misconduct under the Fourth Amendment. Evaluating Gauger's claim that the officers should be liable for giving false testimony at his trial, Judge Posner observed, "[w]hen a defendant is arrested and jailed on the basis of probable cause to believe that he has committed a crime, and only later does police fraud enter the picture with the effect of perpetrating the seizure without good cause, there is a question not as yet authoritatively resolved whether the Fourth Amendment has been violated." *Id*. at 359.[4]

Plaintiffs argue that the this open issue was definitely answered in *Haywood v. City of Chicago*, 378 F.3d 714 (7th Cir. 2004). *Haywood* held that a plaintiff who filed suit under § 1983 alleging false arrest and detention in violation of his constitutional rights could pursue a claim for damages stemming from his detention subsequent to a probable cause hearing when the only evidence presented at that hearing was a falsely sworn complaint. *Id*. The *Haywood*

---

[4]Nevertheless, *Gauger* also reiterated the long-standing principle that any damages based on a violation of the Fourth Amendment (false arrest or improper seizure) were limited to the harm contemplated by the Fourth Amendment: unreasonable searches and seizures. 349 F.3d at 363. For that reason, Gauger was limited to pursuing only those damages "incurred from the false arrest before he was charged." *Id*.

decision suggests that if the coerced confession were the only evidence presented at the probable cause hearing, Kunz may be entitled to pursue damages for the detention that followed. *See also McCullah v. Gadert*, 344 F.3d 655 (7th Cir. 2003) (police fraud in post-indictment report and at preliminary hearing can state § 1983 Fourth Amendment claim).

On the other hand, *Wallace*, which established that false arrest claims accrue at the time of arrest (rather than at the time a subsequent conviction is overturned), clearly rejected "the idea of a stand-alone 'false confession' claim based on the Fourth Amendment, rather than the Fifth Amendment or due process clauses." 440 F.3d at 429. *Wallace* also casts doubt on the applicability of *Jones* to the instant case, describing *Jones* as a case grounded in the notion of a fair trial, involving officers who fabricated evidence and concealed exculpatory evidence. *Id*. If the *Wallace* plaintiff's claims of improper arrest and interrogation techniques did not fall into *Jones*'s scope, neither would Kunz's. Moreover, the *Wallace* plaintiff's claim of unfair interrogation failed to "shock the conscience" in a manner implicating substantive due process jurisprudence. *Id*. Here Kunz's allegation might differ; but he has not argued that he is entitled to damages under § 1983 for a violation of substantive due process.

These cases demonstrate that for purposes of § 1983, damages sought for the consequences of a coerced confession obtained after an arrest supported by probable cause fall outside the scope of the Fourth Amendment. Kunz's claim for damages for his subsequent detention must therefore be grounded on another constitutional (or statutory) provision. Kunz raises one other possibility: the Fifth Amendment, which I discuss below. As Kunz did not argue that his § 1983 claim might be based on a 14th Amendment due process violation – the most likely candidate – I discuss that possibility only briefly.

5

Relying on the recent case of *Sornberger v. City of Knoxville*, 434 F.3d 1006 (7th Cir. 2006), Kunz argues that DeFelice's actions entitle him to damages for a violation of the Fifth Amendment prohibition against self-incrimination. In *Sornberger*, a couple suspected of bank robbery was jailed for four months before the charges against them were dropped. 434 F.3d at 1009. Among other claims, the woman alleged that she was coerced into confessing to the crime and that her confession was made without benefit of the *Miranda* warnings. *Id*. at 1009-10. She sought damages under § 1983, alleging a Fifth Amendment violation. *Id*. A recent Supreme Court decision suggested that this claim had little merit. *See Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (holding that the Fifth Amendment was not violated when compelled statements were not used against the suspect in any criminal case). Nevertheless, the Seventh Circuit found that the facts of *Sornberger* compelled a different result.

> [The plaintiff's] "criminal case" advanced significantly farther than did that of the *Chavez* plaintiff, who never had criminal charges filed against him at all. [Her] statement, by contrast, allowed police to develop probable cause sufficient to charge her and initiate a criminal prosecution. In this fashion, her allegedly un-warned statements were used against her in a way perhaps contemplated by the Self-Incrimination Clause. [This situation] . . . raises the intermediate question left unanswered by *Chavez*: whether a suspect suffers a violation of her right to be free from self-incrimination when her un-warned confession is used to initiate a criminal prosecution against her, but charges are dropped before that confession can ever be introduced at trial.

*Sornberger*, 434 F.3d 1025. The Court then concluded that use of the woman's statements at a probable cause hearing and to set bail constituted use of the statements in a "criminal case" in a manner sufficient to implicate the self-incrimination clause. *Id*. at 1026.

*Sornberger*'s analysis was undertaken with respect to a claim that the woman did not receive *Miranda* warnings before she confessed. The Court observed that with respect to the plaintiff's claim that she was coerced into confessing (by officers who allegedly made threats about her children's future), she might also have a remedy for a violation of substantive due process. *Id*. at 1023-24. "*Chavez* left open the possibility that a plaintiff could pursue a claim for violation of substantive due process in the event of genuine physical or mental coercion surrounding her confession." *Id*. at 1024, n. 11. At best, *Sornberger* suggests that Kunz's claim that his confession was coerced and was the sole cause of his subsequent detention best fits within the framework of substantive due process violations. Yet this is an argument Kunz failed to raise. I offer no opinion on whether he might successfully have based his damages claim on a violation of the Fourteenth Amendment's due process guarantee.

Kunz has failed to establish that he is entitled to seek any additional damages for DeFelice's conduct. For the sake of completeness, however, and in light of the complicated nature of this case, I consider below whether, had Kunz established a basis for § 1983 liability, he had evidence upon which a reasonable jury could award damages in his favor.

***Andrews's Testimony***

For Kunz to succeed on his damages theory, he must establish that the law permits him to seek damages for the time he spent in detention after his confession and also produce evidence from which a reasonable jury could conclude that he would not have spent 20 months in jail but for his coerced confession. To that end, Kunz seeks to introduce the testimony of George

Andrews, a former Cook County Assistant State's Attorney turned criminal defense attorney.[5] On May 15, 2006, I heard Andrews's testimony under direct and cross-examination to determine whether his testimony would be admissible.

Andrews would testify that as a result of the PSMV charge, Kunz received three additional points on his bond recommendation form, and that because of those points, Kunz was detained rather than receiving either probation or a maximum one-year confinement for a pending drug offense (the "PCS charge"). According to Andrews, even the one-year confinement for the PCS charge would have been reduced to a 61-day period pursuant to Illinois Department of Corrections (IDOC) practice.

Defendants raise several objections to this testimony, all of which center on Andrews's qualifications to offer expert testimony and the reliability of his testimony. I disagree on both points. Andrews's particular experience both as a prosecutor and as a defense attorney provide a sufficient basis from which to speak of the effect of a particular charge on a bond recommendation form and the length of time a defendant will be detained based on the charges he faces. On cross-examination, Defendants suggested that Andrews's testimony failed to account for other, outstanding charges against Kunz. These alleged errors affect the weight of Andrews's testimony, not its admissibility. Further, I accept Andrews's representations that the primary basis for his opinion is his experience in the courtroom and in discussions with other attorneys, the judges in front of whom he prosecuted cases, and his own clients. His opinions as to IDOC practices are grounded in experience and are sufficiently reliable. Nor are Defendants

---

[5]Earlier in this case I ruled that Andrews could not testify as to whether the *nolle prosequi* entered in Kunz's PSMV case was indicative of Kunz's innocence. *Kunz v. City of Chicago*, No. 01 C 1753, 2004 WL 2980642, at *5-6 (N.D. Ill. Dec. 23, 2004).

hamstrung by Andrews's testimony: they may challenge the facts on which Andrews relied in reaching his opinions and those facts that Andrews purportedly did not consider in concluding that the PSMV charge caused Kunz's extended detention.

However, before reaching the subject of whether the PSMV charge caused Kunz's 20-month detention, Kunz must first present evidence on the predicate issue of whether, absent his coerced confession, prosecutors would have pursued the PSMV charge and prevailed at Kunz's arraignment. Kunz again turns to Andrews, claiming he would offer an opinion that, absent Kunz's confession, the facts were "insufficient to support a PSMV charge." There are several valid objections to this line of testimony. First, this opinion is not included within Andrews's written report, nor did he testify to this issue at the May 15 hearing. Second, this testimony falls far closer to the type of testimony prohibited at the summary judgment stage than testimony regarding the effect of extra points on a bond recommendation form. Whether the confession "tipped the scale" with respect to the prosecutor's decision to pursue the PSMV charge is also within "the hallmark of what we commonly refer to as prosecutorial discretion." *Kunz*, No. 01 C 1753, 2004 WL 2980642, at *5 (N.D. Ill. Dec. 23, 2004). Just as Andrews could not offer expert opinion as to the reason the prosecutors ultimately dropped the PSMV charge, he cannot opine as to the basis for their initial decision to pursue the charge.

I must consider, then, whether there is sufficient evidence in the record to support a reasonable inference that the coerced confession was an element without which charges could not have been pursued. Kunz observes that *scienter* is a necessary element of the PSMV charge; but aside from Andrews's expert testimony, Kunz has not presented evidence that the confession was the only evidence from which the prosecutors could have determined that Kunz possessed the

9

requisite *scienter*.[6] I would normally permit Kunz an opportunity to identify facts from which a reasonable jury could conclude that but for the coerced confession, Kunz would not have been charged with PSMV. Given my conclusion that Kunz cannot bring his damages claim, I see no need for this exercise.

***Stay of Defendant DeFelice's Assets***

One final matter. On April 6, 2006, at Plaintiff's request, I entered an order preventing Officer Richard DeFelice from further dissipating his assets. Plaintiff made an offer of proof that within a day of the August 11, 2005 jury verdict, DeFelice liquidated or transferred two significant assets and that he failed to disclose several significant assets in an affidavit filed with the court.[7] Defendants sought removal of the order, and on May 15, 2006, I heard DeFelice's testimony with respect to his financial affidavit and the liquidation or transfer of assets near the time of the trial and jury verdict.

After hearing DeFelice's testimony and reviewing the evidence proffered by Plaintiffs in support of the stay, I am convinced that the information contained in Officer DeFelice's Rule 59 financial affidavit is incomplete. The affidavit fails to include assets held in a deferred compensation plan (offered by his current employer) and five insurance policies of which he was the beneficiary. The essence of DeFelice's May 15 testimony was that these omissions were "not

---

[6]Kunz argues that there were no signs of forced entry on the vehicle he allegedly stole, but he relies only on information elicited during Andrews's deposition and does not present other evidence to support this claim.

[7]After the trial, DeFelice entered a Rule 59 motion seeking remittitur of the damages awarded by the jury based on his allegedly limited resources. I entered a motion indicating my willingness to consider his arguments but permitted Plaintiffs to propound discovery that would establish the extent of DeFelice's assets, information DeFelice previously refused to provide Plaintiff.

his fault," as he provided his attorney with all of the information requested by Plaintiff. Nevertheless, DeFelice subsequently signed the affidavit, which purported to list *all* of his assets. Whether or not his attorney erred in failing to list all of those assets in the affidavit, DeFelice averred that the information was correct and complete.

Additionally, I find the transfer of assets immediately after the jury verdict particularly troubling. The day after the jury verdict, DeFelice apparently withdrew a certificate of deposit, incurring a penalty for early withdrawal. DeFelice professes to have known nothing about the CD (which bears his name), the withdrawal of funds or the present location of those funds. On the same day, a savings account also held in DeFelice's name was liquidated; he again professes ignorance about the account and the reason for its closing. Finally, less than one week after the jury verdict, DeFelice transferred the title of his home to his wife. DeFelice's testimony regarding the planning and preparation behind this transfer (which allegedly occurred prior to trial) was inconsistent with evidence provided by the attorney who prepared the deed transferring title. DeFelice testified under oath that the transfer was unrelated to the jury verdict and not part of any effort to disguise assets; that testimony is difficult to accept.

Notwithstanding this conduct, I am persuaded to lift the stay enjoining DeFelice's access to his remaining funds. Kunz appears to have discovered all of DeFelice's assets, including those he failed to disclose in his affidavit. Moreover, Kunz has an adequate remedy at law should he prove that DeFelice fraudulently transferred assets in order to avoid any damages arising frp, the jury's verdict. *See Illinois Uniform Fraudulent Transfer Act*, 740 ILCS 160/1 et seq. (permitting the actual or effective nullification of fraudulent transfers). *See also Missouri Uniform Fraudulent Transfer Act*, §§ 428.005 - 428.059. Defendants suggest that Kunz never had any right to the assets in DeFelice's joint accounts, as both were held by husband and wife as tenants

11

by the entireties. This is plainly incorrect: both the CD and the savings account were not held as joint tenancy by the entirety, as stated on the face of the account documents. Nonetheless, the stay cannot un-do the transfer and Kunz has not shown that he lacks a legal remedy if the transfer was indeed fraudulent.

Rather, I will take into account DeFelice's failure to fully disclose his assets and the suspicious timing of the transfer of assets when I consider Defendants' motion to reduce the punitive damages award on account of DeFelice's purported inability to pay. For the time being, I grant Defendants' motion to reconsider and lift the stay. However, DeFelice must maintain a list of his and his wife's expenditures over $500.

For these reasons, Plaintiff's Motion to Submit His Bifurcated Damages Theory is denied. Defendants' Motion to Reconsider is granted.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: June 22, 2006