# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JEREMY KUNZ,

    Plaintiff,

v.

CITY OF CHICAGO, et al.,

    Defendants.

No. 01 C 1753
Judge James B. Zagel

## AMENDED MEMORANDUM OPINION AND ORDER

Currently before me is Plaintiff Jeremy Kunz's Motion for Summary Judgment On His Fraudulent Conveyance Claims. For the reasons stated below, that motion is granted.

## I.  BACKGROUND

The extremely long history of this case is well-known to the parties involved. On August 11, 2005, a jury determined that Richard DeFelice ("Officer DeFelice") violated Mr. Kunz's constitutional rights and awarded him $10,000 in compensatory damages and $250,000 in punitive damages ("Jury Verdict").[1] On August 30, 2006, I granted Officer DeFelice's Motion under Rule 59 of the Federal Rules of Civil Procedures in part and reduced the punitive damages award to $90,000.

In the time immediately following the August 11 jury verdict, Officer DeFelice executed a number of asset transfers that raised suspicion that he intended to hinder, delay, or defraud Mr. Kunz, who was his creditor.

---

[1] The jury also awarded Kunz $15,000 in compensatory damages for the injuries inflicted by other, unnamed officers. The punitive damages award, which could only be awarded against Defendant DeFelice, was ten times the amount of the compensatory damages assessed against all of the defendants.

*A.  The Missouri Property*

Officer DeFelice and his wife Judith purchased a home in Liberty, Missouri in 1998 (the "Missouri Property"). On August 16, 2005, five days after the Jury Verdict, the DeFelices executed a warranty deed whereby Officer DeFelice's ownership interest in the property was transferred to his wife Judith for consideration of $10.[2] A May 4, 2006 appraisal report stated that the Missouri Property was worth $195,000. Officer DeFelice admits both that he continues to reside on the Missouri Property and that he paid property taxes on it after he transferred his ownership interest to his wife.

*B.  Savings Account and Certificate of Deposit at Liberty Savings Bank*

In February, 2005, a $35,000 certificate of deposit ("CD") was issued to Richard, Judith, and Michael DeFelice. Officer DeFelice was listed as the "Owner/Signer" of the instrument, his signature appears throughout the application for it, and he is listed as its "Reporting customer"

---

[2]Officer DeFelice asserts that he initiated the paperwork necessary to effectuate the transfer on August 1, 2005. Even if, as a legal matter, that distinction were significant, Officer DeFelice's story is difficult to believe.

The DeFelices point to an un-notarized letter from the President of the Title Company—written on January 31, 2006, long after Kunz began conducting discovery into the transaction—indicating that the transaction was not finalized at the alleged August 1, 2005 meeting because Judith DeFelice was not present (and she needed to be to sign the forms). However, when he was being deposed about the alleged August 1, 2005 meeting, Officer DeFelice said the Title Company representative "took *our* Social Security numbers . . . photographed *our* licenses and Social Security Cards . . . [and] checked *our* identification." He also testified that "*we* left . . ." In addition, when Judith DeFelice was deposed about the meeting, she testified that she and Richard had both been to Thompson Title before August 16, 2005.

At bottom, it appears as though the story about the August 1 meeting at the Title Company was concocted to give the appearance that the transfer was in the works before the Jury Verdict. I doubt that any reasonable trier of fact would believe it, but I accept it as true for purposes of this motion. Ironically, for purposes of Kunz's fraudulent transfer claims, it is irrelevant whether the process was initiated on August 1 or August 11. *See* 740 ILL. COMP. STAT. 160/5 (2002).

2

(by contrast, his wife and son are listed as "Additional customer(s)/signatories"). On August 12, 2005—the day after the Jury Verdict—the CD was withdrawn. Since the CD had a maturity date of January 8, 2006, the August 12, 2005 withdrawal was premature. As a result of this premature withdrawal, a penalty of $296.45 was assessed against the DeFelices.

In February, 2005, a joint savings account was opened in the name of Richard, Judith and Michael DeFelice at Liberty Savings Bank. Richard was listed as "Owner/Signer" of this instrument, his signature appears throughout the application for it, and he is listed as its "reporting customer" (his wife and son, by contrast, are listed as "additional customer(s)/signatories"). On August 12, 2005—the day after the Jury Verdict—the account was closed.

Judith DeFelice testified that she closed the account and withdrew the CD. The only reason she gave for doing so was because she feared she could die at any moment. However, she is unable to point to any material change in her health status between February, 2005, when the accounts were opened, and August 12, 2005—the day after the Jury Verdict—when they were withdrawn/closed. On the day the accounts were withdrawn/closed, Judith DeFelice did not have any medical operations scheduled, and she had not been diagnosed with any life-threatening medical condition.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

3

Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986) (stating that summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in the plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

  *B. Uniform Fraudulent Transfer Act, § 5*

The Uniform Fraudulent Transfer Act states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation as incurred, if the debtor made the transfer or incurred the obligation:
>  (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>  (2) without receiving a reasonable equivalent value in exchange for the transfer or obligation, and the debtor:
>   (A) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>   (B) intended to incur, or believed or reasonablely should have believed he would incur, debts beyond his ability to pay as they became due.

740 ILL. COMP. STAT. 160/5(a).

In construing this statute, courts have delineated two categories of cases: "fraud in fact" and "fraud in law." *See Scholes v. Lehmann*, 56 F.3d 750, 756-57 (7th Cir. 1995). Unlike fraud

4

in fact, a movant can establish fraud in law without proving fraudulent intent. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997); *Scholes*, 56 F.3d at 757. Intent need not be proved because, under fraud in law, intent is presumed. *See Gendron v. Chicago & North Western Transp. Co.*, 564 N.E.2d 1207, 1215 (Ill. 1990). In order to establish fraud in law, the movant must demonstrate that: 1) the debtor made a voluntary transfer; 2) at the time of the transfer, the debtor had incurred obligations elsewhere; 3) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer; and 4) after the transfer, the debtor failed to retain sufficient property to pay the indebtedness. *Gen Elec. Capital Corp.*, 128 F.3d at 1079.

In order to prove "fraud in fact," on the other hand, the movant must prove that a debtor transferred property with the specific intent to hinder, delay or defraud his creditors. 740 ILL. COMP. STAT. 160/5(a)(1); *Lindholm v. Holtz*, 581 N.E.2d 860, 863 (Ill. App. Ct. 1991) (*citing Gendron v. Chi. & N.W. Transp. Co.*, 564 N.E.2d 1207, 1214-15 (Ill. 1990)). The statute sets forth eleven factors—often referred to as "badges of fraud"—to guide courts in determining whether the transferor had the required intent. 740 ILL. COMP. STAT. 150/5(b). Those factors are:

>(1) the transfer or obligation was to an insider;
>(2) the debtor retained possession or control of the property transferred after the transfer;
>(3) the transfer or obligation was disclosed or concealed;
>(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>(5) the transfer was of substantially all the debtor's assets;
>(6) the debtor absconded;
>(7) the debtor removed or concealed assets;
>(8) the value of the consideration received by the debtor was [not] reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Id.*

If these badges of fraud exist in sufficient numbers, then the movant establishes a presumption of fraud. *Steel Co. v. Morgan Marshall Indus., Inc.*, 662 N.E.2d 595, 602 (Ill. App. Ct. 1996). In that case, the burden then shifts to the non-movant to rebut that presumption. *In re Roti*, 271 B.R. 281, 302 (Bankr. N.D. Ill. 2002).

### C. The DeFelices

The transfers at issue here constitute both fraud in fact and fraud in law. Turning initially to fraud in law, Kunz has established the four necessary elements. First, Officer DeFelice testified in his deposition that he voluntarily transferred his interest in the Missouri property to his wife. It is likewise undisputed that he assented to his wife's withdrawal of the CD and to her closing of the savings account. Second, at the time of these transfers—the Missouri property was transferred on August 16[3] and the CD and savings account were transferred on August 12—Officer DeFelice had incurred obligations elsewhere. Namely, as a result of the Jury Verdict, he had incurred an obligation to Mr. Kunz. Third, Officer DeFelice did not receive a reasonably equivalent value in exchange for the transfer. The Seventh Circuit noted recently that "Illinois courts have not elaborated on the meaning of 'reasonably equivalent value,' except to note that a transfer lacks reasonably equivalent value if there is no or inadequate consideration."

---

[3]Despite Officer DeFelice's assertion that the transfer was in the works on August 1, the transfer was executed on August 16.

6

*Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer*, --- F.3d ----, 2007 WL 6145, at *3 (7th Cir. 2007) (*citing Regan v. Ivanelli*, 617 N.E.2d 808, 814 (1993)). The Seventh Circuit has also explained that "[t]he test used to determine reasonably equivalent value in the context of a fraudulent conveyance requires the court to determine the value of what was transferred and to compare it to what was received." *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997). In this case, there is no question but that the $10 Officer DeFelice received for his interest in the Missouri Property, which was valued at $195,000, is not reasonably equivalent value. Lastly, if Officer DeFelice's submissions to this Court are to believed, then he lacks the wherewithal to satisfy his indebtedness to Mr. Kunz. Accordingly, based on a fraud in law theory, summary judgment is proper on Mr. Kunz's claims.

Though the fraud in law theory is sufficient to warrant summary judgment for Mr. Kunz, Plaintiff also succeeds in establishing fraud in fact. That is, he succeeds in establishing a presumption of fraud, *Steel Co.*, 662 N.E.2d at 602, and Officer DeFelice fails to rebut that presumption. *In re Roti*, 271 B.R. at 302. The first "badge of fraud" the statute references is whether the transfer was to an insider. 740 ILL. COMP. STAT. 160/5(b)(1). The transfers in this case—to Officer DeFelice's wife—unquestionably were to an insider. This intra-family transfer, is a powerful indicator of fraud. *See Reisch v. Bowie*, 10 N.E.2d 663, 666 (Ill. 1937) ("Although a conveyance between parties related to each other by blood or marriage is not, of itself, fraudulent as against the grantor's creditors . . ., yet the fact of relationship may properly be considered in connection with other evidence tending to impeach the transaction." (citation omitted)); *In re Roti*, 271 B.R. at 301 ("While a transfer between family members is not proof *per se* of fraudulent intent, a familial relationship is weighty proof of such intent.").

The second badge of fraud—"the debtor retained possession or control of the property transferred after the transfer"—is also implicated here. 740 ILL. COMP. STAT. 160/5(b)(2). This badge applies since Officer DeFelice admits to both continuing to live on the property and paying property taxes thereon. The fourth badge applies because Officer DeFelice had been sued before the transfers were made. 740 ILL. COMP. STAT. 160/5(b)(4). The fifth badge applies because the transfers were of substantially all of Officer DeFelice's assets. 740 ILL. COMP. STAT. 160/5(b)(5).

The eighth badge also applies. As noted above, Officer DeFelice received only $10 in consideration for transferring his ownership interest in the Missouri property, which was valued at $195,000. Since this consideration "was [not] reasonably equivalent to the value of the asset transferred," the eighth badge is present. 740 ILL. COMP. STAT. 160/5(b)(8). The ninth and tenth badges apply too: Officer DeFelice became insolvent shortly after the transfers, and the transfers occurred almost immediately after his substantial debt to Mr. Kunz was incurred (the Jury Verdict was announced on August 11, and the transfers occurred on August 12 and August 16). 740 ILL. COMP. STAT. 160/5(b)(9) and (10).

In sum, at least seven of the statutorily enumerated badges of fraud are implicated here—more than enough to establish a presumption of fraud. *See United States v. Engh*, 330 F.3d 954, 956 (7th Cir. 2003). But ever more fundamentally, any reasonably objective observer looking at the circumstances here—three transfers, each within five days of a jury verdict, for nominal or no consideration, and to the judgment debtor's wife—would instantly conclude that the DeFelices were attempting to shield their assets from Mr. Kunz in an effort to frustrate his efforts to collect what he was owed. The DeFelice's purported explanations for these events are

8

patently unbelievable, arguably perjurous. Thus, Mr. Kunz has established a presumption of fraud. Since Officer DeFelice is unable to demonstrate either good faith or reasonably equivalent value, he cannot rebut the presumption. 740 ILL. COMP. STAT. 160/9(a); *In re Zeigler*, 320 B.R. 362, 374 (Bankr. N.D. Ill. 2005). Accordingly, summary judgment is appropriate on the alternative theory of fraud in fact as well.

### D. Uniform Fraudulent Transfer Act, § 6

Although Plaintiff only makes passing mention to it in his papers, relief is also available to him pursuant to § 6 of the Uniform Fraudulent Transfer Act. 740 ILL. COMP. STAT. 160/6. The statute states, in pertinent part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

740 ILL. COMP. STAT. 160/6(a).

As the Seventh Circuit explains, "[w]hen a person transfers money or other property to another person without receiving [reasonably equivalent value] in return, and the transferor is insolvent (or made insolvent by the transfer), the transfer is voidable even if there was no intent to hinder creditors." *Nostalgia Network, Inc. v. Lockwood*, 315 F.3d 717, 719 (7th Cir. 2002).

In order to prevail on a claim made pursuant to § 160/6(a), the movant must establish the following elements: (1) a transfer was made by the Debtor; (2) the Debtor made the transfer without receiving a reasonably equivalent value in exchange for the transferred property; and (3) the Debtor either was insolvent at the time of the transfer or became insolvent as a result of the transfer. *In re Knippen*, --- B.R. ----, 2006 WL 3616496, at *20 (Bankr. N.D. Ill. 2006). "Fraud

9

need not be alleged because it is presumed; and intent is immaterial." *Liquidation of MedCare HMO, Inc.*, 689 N.E.2d 374, 380 (Ill. App. Ct. 1997) (*citing People ex rel. Hartigan v. Gaby's Apparel, Ltd.*, 478 N.E.2d 1043 (1985)).

It is clear from the preceding discussion of § 5, that Mr. Kunz is also entitled to relief under § 6. Officer DeFelice made transfers after the Jury Verdict. He did not receive reasonably equivalent value in exchange for the transferred property. And as a result of the debt owed to Mr. Kunz and the property he transferred, Officer DeFelice is insolvent. Accordingly, 740 ILL. COMP. STAT. 160/6(a) provides even another avenue for relief.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: February 15, 2007