# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JEREMY KUNZ,

    Plaintiff,

v.

CITY OF CHICAGO, *et al.*,

    Defendants.

No. 01 C 1753
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff's attorneys—who won a verdict in a civil rights case—seek fees for their services. Their opening memorandum correctly states the law, and provides the customary justification for the fees charged and the hours invested. This is to be expected of a group of lawyers whose practice is very largely, if not wholly, devoted to cases brought under fee-shifting statutes. I do not reiterate here the legal principles they recited. They note that their opponents did not participate in the Local Rule 54.3 process, which requires the parties to meet and confer to resolve differences if they can. One reason for the rule is that, after years of hearing contests over fee petitions, it became clear to the Court that many disputes evolved from misunderstandings between the parties, the inability to confirm the basis for fee requests, or objections without looking at materials in the opponent's possession. Where the Rule is followed it does, in my experience, reduce the number of issues to be decided when fees are in

dispute.  Failure to follow the Rule waives objections to the petition.[1]  Because it seems useful to do so here, I do address the substance of some objections.

This was not a partial victory.  Plaintiff was, at least on paper, an unattractive plaintiff who performed bad acts and engaged in conduct that a jury could find provoked police into improper conduct.  There were cultural differences between him and many members of the jury pool.  Moreover, Officer DeFelice was an honorably retired police officer.  At trial, it turned out that Kunz was not all that unattractive as a plaintiff and DeFelice was anything but winning as a defendant.  The case was vigorously and expensively defended, and the settlement offer that was made came after much had been spent to litigate the case.  The disposition of the *Monell* claim was useful to the City, but it was helpful to Plaintiff as well because it simplified his case.  The City did not win the *Monell* claim; it was effectively removed from the case.

In this case, there was no wasted effort (though some of it proved unfruitful).  It is true that, with unwarranted frequency, plaintiffs add a claim of conspiracy if there is more than one person who he or she claims did them wrong.  And, though less frequently, a pointless claim of malicious prosecution is added.  This is not the case here.  From Plaintiff's perspective, he was

---

[1] In my Court, and perhaps others, I will consider failure to justify expenses and fees when the failure to justify is patent in the petition, much as I am obliged to consider the sufficiency of even unopposed motions for summary judgment.  In this case, there is just one such failing and it is minor.  The hourly fee proposed for Arthur Loevy is patently too high.  Arthur Loevy's career has included long stretches (more than half of his time since law school) as a union official and not as a practicing lawyer.  He is forty-five years out of law school and I read his resume to say he has 17 years of law practice.  What he did when he was not practicing law may be more socially useful that lawyering, but it cannot justify the fee asked for him.  In the context of this case, it is a close question whether he should even be awarded the same $375 that Jon Loevy thinks is appropriate for his own efforts.  I decide, perhaps influenced by my own age, that he should be awarded a fee of $375 per hour because, in addition to the mechanical skills of a litigator and trial advocate, the judgment acquired by experience adds value to any legal project like this.

abused by a large number of police officers from two different districts.  He knew the names of those involved who were from the district where he was taken into custody.  There were no reports from or about the officers from the other districts.  His lawyers could reasonably believe that excessive force was perpetrated by out-of-district officers whose names are more difficult to discover and that this was conspiratorial.  His subsequent treatment in the courts also justified a claim (even if later abandoned or lost) of malicious prosecution.  The money spent to collect the judgment was also well-spent and arguably also serving the public interest.[2]

    There are an inordinate amount of objections to specific billing entries, over a thousand.  I examined a large sample of them and I found so few that presented even arguable objections that I stopped reading them.  I found none that I would sustain.  I do not think I am obliged, under the circumstances of this case, to rule on each one.  What I mean here about the circumstances of this case is that the hours spent on the defense of this case are comparable or greater than the hours spent on the offense.  Courts are allowed to consider this fact in deciding whether the overall count of hours is reasonable.  Many of the defense objections are founded on inadequate explanations in billing records, but there is no binding standard on how hours should be described and how great the detail should be.  If, on the face of it, the hours seem out of line, there is some weight to a claim that descriptions are too sparse, but the hours are not out of line here.

---

[2] Officer DeFelice blames his lawyers for what he contends is only an apparent appearance of trying to hide his assets after the adverse verdict.  His remedy for this, if it occurred, lies against his lawyers, not the plaintiff.

With the exception of modification in the hourly rate with respect to Arthur Loevy, the petition for fees and costs is granted.

ENTER:

James B. Zagel
United States District Judge

DATE: August 14, 2008